IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVLLE DIVISION

**RUBEN VILLARREAL**                                                                                          **PLAINTIFF**

V.                                          **CASE NO: 5:22-CV-5173**

**COMMISIONER,**
**Social Security Administration**                                                                         **DEFENDANT**

## OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 16) of the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas. The R&R advises the Court to reverse the decision of the Administrative Law Judge ("ALJ") and remand the case to the Social Security Administration to more fully develop the record and reevaluate Plaintiff Ruben Villarreal's Residual Functional Capacity ("RFC"). (Doc. 16, p. 6). The Commissioner filed an Objection to the R&R (Doc. 17), arguing that the ALJ's RFC determination was properly supported by the record. The Court has undertaken a *de novo* review of the record and agrees that the case should be **REVERSED** and **REMANDED** to the Commissioner.

## I.     APPLICABLE LAW

The Court reviews this case *de novo* to "ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016); *see* 42 U.S.C. § 405(g). Substantial evidence is a less onerous burden than preponderance of the evidence and exists when a reasonable mind would accept the evidence as "adequate to support a conclusion." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). In determining whether there is

1

substantial evidence to support the ALJ's findings, the Court "must consider evidence in the record that fairly detracts from, as well as supports" the ALJ's decision. *Id*. If this Court determines that the ALJ's decision is supported by substantial evidence on the record as a whole, then it must affirm. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009)).

According to the R&R, the ALJ erred in evaluating Mr. Villarreal's RFC, which is defined as "the most [a social security claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC determination must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers*, 721 F.3d at 527 (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). It is well established that a "claimant's RFC is a medical question" that "must be supported by some medical evidence of the claimant's ability to function in the workplace." *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). The ALJ must "set forth specifically a claimant's limitations and [ ] determine how those limitations affect his RFC." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

## II.   DISCUSSION

Here, the ALJ found Mr. Villarreal to have an RFC that allows "sedentary work as defined in 20 CFR 44.1567(a) except that [Mr. Villarreal] can occasionally climb ramps and stairs but never climb ladder[s], ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl." (Doc. 10, p. 26).

The Magistrate Judge recommended reversing and remanding the case back to the ALJ for three reasons: first, to ensure that the ALJ considers certain evidence that

contradicts the current "sedentary" RFC, (Doc. 16, pp. 4–5); second, to ensure the ALJ considers evidence about Plaintiff's dizziness and syncope and, if appropriate, factors this into the RFC, *id.* at p. 5; finally, the Magistrate Judge recommends requiring the ALJ to address interrogatories to another medical professional, "requesting that said physician review of Plaintiff's medical records, complete an RFC assessment regarding Plaintiff's capabilities during the time period in question, and give the objective basis for the opinion so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis," *id.* at p. 6. Defendant objects to each of the Magistrate's recommendations. (Doc. 17). Additionally, though not included in the R&R, the Court is concerned with the ALJ's assessment of Plaintiff's subjective complaints of pain. The Court will discuss each of these issues in turn.

### A.  Whether there is substantial evidence to support the ALJ's finding that Plaintiff can do sedentary work with no further restrictions on sitting and standing.

#### 1.  Dr. Ruiz's Opinion

Like the Magistrate Judge, this Court is particularly concerned with the ALJ's RFC determination allowing for sedentary work with no further limitations on sitting duration. Here, the ALJ found that Mr. Villarreal could perform sedentary work with the exception that he could occasionally climb ramps and stairs but never ladders, ropes, and scaffolds, and he could occasionally balance, stoop, kneel, crouch, and crawl. (Doc. 10, p. 26). Sedentary work requires the ability to sit for about six hours in an eight-hour workday and to stand and/or walk no more than two hours in an eight-hour workday. *See* SSR 96-9P, 1996 WL374185. The RFC does not include any limitations on prolonged sitting or standing.

In May 2020, Dr. Calvin Ruiz—one of Mr. Villarreal's treating physicians—opined that Mr. Villarreal is not able to perform sedentary work because he could sit, stand, and walk for only two hours in an eight-hour workday. (Doc. 10, pp. 575–80). More specifically, Dr. Ruiz stated that Mr. Villarreal would require breaks from prolonged sitting or standing to alleviate the spasms and immobility that accompany his condition. *See id.* at pp. 30 & 575. The ALJ found Dr. Ruiz's opinion unpersuasive because it was not supported by or consistent with the evidence of record. *Id.* at pp. 30–31.

In February of 2020, Dr. Ruiz completed a Medical Source Statement ("MSS") (Doc. 10, pp. 575–79). An MSS is a form that "consists of a series of check marks assessing residual functional capacity, a determination the ALJ must make, which are 'conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record.'" *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011) (citing *Cain v. Barnhart*, 197 Fed. Appx. 531, 533 (8th Cir. 2006) (unpublished)). In the MSS, Dr. Ruiz marked significant limitations on Plaintiff's ability to stand, walk, and sit, among other restrictions that are inconsistent with sedentary work requirements. To be sure, the ALJ cites several pieces of evidence that he found inconsistent with Dr. Ruiz's opinion before finding the opinion unpersuasive. *See* Doc. 10, pp. 30–31. However, it is not clear how the evidence cited by the ALJ contradicts Dr. Ruiz's assessment that Mr. Villarreal has both sitting and standing limitations. *See id.* at p. 580.

Moreover, despite the ALJ's claims that Dr. Ruiz's opinion was not supported by other medical evidence, the R&R identified four points of medical evidence of record that support Dr. Ruiz's findings that Plaintiff has limitations on prolonged sitting and standing:

1. "[I]n June of 2019, Dr. Jaquelyn Wilansky noted Plaintiff . . . was unable to sit up straight due to back pain." Doc. 16, pp. 4–5 (citing Doc. 10, p. 458).

4

2. "In November of 2019, Dr. Katherine E. Darland noted Plaintiff was unable to sit still in the chair and frequently shifted his weight due to pain." Doc. 16, p. 5 (Doc. 10, p. 543 (also stating "stretching[ ] and movement tend to preoccupy pt from pain")).

3. "In December of 2019, Dr Paul Middleton noted Plaintiff reported his back pain interfered with his ability . . . to sit for prolonged periods of time." Doc. 16, p. 5 (citing Doc. 10, p. 532 (stating "his pain is aggravated by . . . prolonged sitting")).

4. "Despite experiencing on-going and continuous pain, Dr. Ruiz indicated Plaintiff was unable to undergo a MRI due to . . . the inability to sit due to his pain." Doc. 16, p. 5 (citing Doc. 10, p. 598).

Additionally, the R&R cites two letters from Plaintiff's former employers that detail the significant change in performance following Plaintiff's back injury, including lapses in judgment that left him unable to perform his job duties. (Doc. 16, p. 5 (citing Doc. 10, pp. 313–14)). Though these letters are not binding on the ALJ, they demonstrate the record's pervasive consistency with Dr. Ruiz's finding and further show that the ALJ's conclusion was not supported by substantial evidence.

By contrast, the current RFC does not account for any limitations on sitting or standing duration, and the ALJ has not provided substantial evidence to support his finding that Dr. Ruiz's opinion on these limitations was unpersuasive. The RFC should be based on the record as a whole, and the ALJ should *consider* all relevant evidence even if it is not expressly discussed. *See Myers*, 721 F.3d at 527 ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence . . . ." (quoting *McKinney*, 228 F.3d at 868)). Here, the ALJ did not identify substantial evidence for discounting Dr. Ruiz's opinion on Plaintiff's sitting and standing limitations. Moreover, the ALJ does not seem to factor in these limitations when setting forth Plaintiff's limitations and determining how those limitations affect his RFC. *See Lewis*, 353 F.3d at 646

5

(requiring an ALJ to "set forth specifically a claimant's limitations"); *see, e.g.*, *Tucker v. Barnhart*, 6 F.3d 781, 782 (8th Cir. 2004) (stating specifically in the RFC that the claimant could "stand and walk ten minutes a time for up to an hour a day, and sit up to an hour at a time for a total of seven hours a day"). The ALJ's conclusion that Dr. Ruiz's opinion is inconsistent with and unsupported by the evidence, along with the ALJ's exclusion of any restrictions on sitting and standing in the RFC, suggests that he did not actually *consider* all the evidence.

The Defendant argues that the RFC need only be supported by some medical evidence, not necessarily medical opinion, *Hensley*, 829 F.3d at 932, and that the Eighth Circuit has "affirmed numerous ALJ decisions even though there was no opinion evidence at all from a treating or examining source assessing functional limitations." *See* Doc. 17, p. 3 (citing various Eighth Circuit examples). The trouble here is not that the ALJ simply made an RFC not fully supported by positive evidence, but the ALJ failed to provide substantial evidence for dismissing a medical opinion that was supported by and consistent with the record as a whole and that established functional limitations beyond those in his RFC.

Defendant suggests that by acknowledging one report that notes that Plaintiff has difficulty sitting still, the ALJ showed that this evidence was considered. *See* Doc. 17, pp. 1–2. However, the ALJ's reference to this as support for lowering the RFC from medium work to sedentary, does not assuage this Court's concern. The determination that the Plaintiff is capable of sedentary work—that is, sitting for six hours in an eight-hour workday—was not based on consideration of the record as a whole.

6

### 2. Plaintiff's Subjective Complaints

In determining a plaintiff's RFC, the ALJ "must evaluate the credibility of the testimony regarding subjective pain complaints." *Ramirez v. Barnhart*, 292 F.3d 576, 580–81 (8th Cir. 2002). When there are inconsistencies between a plaintiff's subjective complaints and the record as a whole, the ALJ is justified in discounting the plaintiff's subjective complaints. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996). Though not included in the R&R, this Court disagrees with the ALJ's finding that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the objective medical findings and other statements concerning his daily activities. (Doc. 10, pp. 27–28).

An ALJ may "make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Ramirez*, 292 F.3d at 581. Here, the ALJ does not make an overall finding that Plaintiff's reports of his symptoms and pain are not credible. In fact, the ALJ credits Plaintiff's statements regarding the "nature, intensity, frequency, persistence and limiting effects of his impairments" in finding that Plaintiff should be limited to sedentary work. (Doc. 10, p. 27. The ALJ also credits Plaintiff's subjective complaints of pain in "further limit[ing] him to work with occasional balancing, stooping, kneeling, crouching, and crawling" and to "occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds." *Id.* But despite consistent subjective complaints and medical evidence regarding Plaintiff's inability to sit for a prolonged period, the ALJ neither includes a sitting limitation in the RFC nor explains its exclusion. Rather, the ALJ states that "the evidence as a whole does not support finding the claimant to be more limited" than the current RFC. *Id.* Confusingly,

directly after crediting Plaintiff's testimony as the basis for the sedentary RFC, the ALJ states that the "intensity, persistence, and limiting effects" of Plaintiff's condition are not consistent with the medical findings or Plaintiff's statements about his daily activities. *Id.* at pp. 27–28.

The medical evidence that the ALJ describes as inconsistent with Plaintiff's subjective complaints is not sufficient to discount all of Plaintiff's subjective complaints, such as the inability to sit for a prolonged period. *Id.* at p. 28. For example, the ALJ cites that the medical evidence shows only minimal mid-thoracic spondylosis and that at certain appointments Plaintiff had a normal gait, no limited range of motion, and no muscle tenderness. *Id.* These findings do not contradict Plaintiff's subjective complaints of his difficulty sitting—there is no evidence that minimal spondylosis does not cause the reported levels of pain or that Plaintiff's gait and range of motion would be determinative of his ability to sit for prolonged periods. Additionally, as the ALJ briefly notes and the R&R further identified, there is medical evidence that supports Plaintiff's limited ability to sit. *See supra* II(A)(1) (listing four points of medical evidence that support limited ability to sit); *see also* Doc. 10, p. 720; Doc. 16, pp. 4–5.

Whether the Plaintiff's own reports of his condition are internally consistent is significant as well. The ALJ cites Plaintiff's self-reported activities—being an online student, going shopping once per week, paying bills, counting change, handling bank accounts, spending time with others, and having "no problems getting along" with friends, families, and authority figures, (Doc. 10, pp. 27–28)—as being inconsistent with Plaintiff's subjective complaints about his pain and abilities. After reviewing Plaintiff's self-completed function report, *id.* at pp. 349–56—from which the ALJ pulled this information—

the Court does not find the excerpts included in the ALJ's report to be reflective of the whole of the report. That is, when taken in context, there is not substantial evidence to find that Plaintiff's daily activities are inconsistent with his subjective complaints.

To start, the ALJ's observation that Mr. Villarreal is an online student fails to include that he "tr[ies] to complete the homework assigned for the class by sitting, standing, and taking constant breaks." *Id.* at p. 349. While the ALJ states that Mr. Villarreal reports spending time with others, Mr. Villarreal explains that he frequently has to "leave early or not attend," *id.* at p. 350, because his pain has "prevented [him] from being able to enjoy anything like family gatherings." *Id.* at 353.

Further, although Mr. Villarreal checked boxes that he can pay bills, count change, and handle bank accounts, *id.* at p. 352, it is unclear how this contradicts Plaintiff's subjective complaints of pain except that it shows he can—at least at times—maintain enough focus for simple math. On the same page of the function report, Plaintiff also described that he only goes outside once or twice a day because of the pain, that he rarely drives due to "stabbing pains . . . that lead to trouble breathing," and that he does not go out alone for the same reasons. The Court does not see how the daily activities that the ALJ cites provide substantial evidence to find inconsistency between Plaintiff's daily activities and Plaintiff's reports of the duration, frequency, and intensity of the pain.

### B.  Whether the ALJ should have addressed Mr. Villarreal's dizziness and syncope.

The Magistrate Judge expressed further concern with the ALJ's failure to address Mr. Villarreal's experiences with dizziness and syncope (blacking out). (Doc. 16, p. 5). This Court shares these concerns. Defendant argues that the ALJ need not have specifically addressed this symptom because it was considered by the prior administrative

medical findings that the ALJ found persuasive and because the evidence suggests that the symptoms were due to a since-discontinued medication. (Doc. 17, p. 2).

After reviewing the record, it appears that Mr. Villarreal's dizziness and syncopal episodes could affect his residual functional capacity. Though on remand an ALJ could find there is substantial evidence that Mr. Villarreal no longer suffers from dizziness following discontinuation of certain medications, there may also be substantial evidence that Mr. Villarreal's dizziness and syncope are ongoing concerns that affect his RFC. The current RFC's exclusion of these symptoms and the ALJ's failure to identify substantial evidence to support the exclusion further suggest that the ALJ failed to consider the entirety of the record in formulating the RFC.

It is true that there are several medical reports explaining that these symptoms are likely connected to medication: in August 2020, Dr. Ruiz reported improvement to dizziness after decreasing amitriptyline dose, (Doc. 10, p. 605); in May of 2020, Dr. Mecum says that Mr. Villarreal suspects that prazosin is causing low blood pressure and "black outs," *id.* at p. 717; and in June 2021, Dr. Brimberry reported no blackouts after stopping prazosin and that he suspects the syncope is due to medication side effects, *id.* at p. 138. However, there is also some evidence that dizziness and syncope are ongoing concerns: in July 2021, Dr. Mecum reported that Mr. Villarreal "[f]alls frequently—gets dizzy and cannot feel his legs and falls," *id.* at p. 177; and in September 2021, Dr. Brimberry reported that Mr. Villarreal described "episodes of sudden, without warning blackout spells," *id.* at p. 174. Lastly, even if the dizziness and syncope are side effects of a medication, whether Mr. Villarreal can safely avoid the medications that cause these side effects is uncertain.

That the ALJ's report failed to address these symptoms at all again suggests that the ALJ did not take the entirety of the record into account or set forth specifically Plaintiff's limitations when forming the Plaintiff's RFC. *See Myers*, 721 F.3d at 527; *Lewis*, 353 F.3d at 646.

### C. Whether the Court may give specific directives to the ALJ for developing the record on remand.

In remanding the case to the Commissioner, the Magistrate Judge recommends that the ALJ

> address interrogatories to a medical professional requesting that said physician review Plaintiff's medical records; complete a RFC assessment regarding Plaintiff's capabilities during the time period in question; and give the objective basis for the opinion so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis. With this evidence, the ALJ should then re-evaluate Plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessment and supported by the evidence.

(Doc. 16, p. 6).

The Court is hesitant to blanketly prescribe as specific a directive as the Magistrate Judge recommends. However, it is incumbent on the ALJ to fully and fairly develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."); *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." (citing *Cox v. Apfel*, 160 F.3d 120, 120910 (8th Cir. 1998))). The Court finds that the current RFC is not supported by substantial evidence on the record as a whole. On remand, should the ALJ conclude that an additional limitation—such as sitting and

standing duration—is appropriate, the ALJ should reassess Plaintiff's ability to perform prior work under Step Four or other work under Step Five by specifically posing these limitations in a hypothetical to a vocational expert. Should the ALJ decide that the current RFC still seems appropriate, the ALJ is directed to take the steps recommended by the Magistrate Judge as is necessary to fully and fairly develop the record and to ensure that the RFC is supported by substantial evidence.

### III.   CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioner's Objections (Doc. 17) are **OVERRULED** and the Magistrate Judge's R&R (Doc. 16) is **ADOPTED IN PART** as to the ALJ reevaluating the RFC **AND MODIFIED IN PART** as to developing the record on remand. The decision of the ALJ is **REVERSED** and the case is **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with the recommendations set forth in R&R and within this decision.

**IT IS SO ORDERED** on this 27th day of September, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE